McKEE, Circuit Judge
concurring.
I agree with the reasoning of my colleagues and therefore join in their opinion. However, I think it necessary to state that I think that our analysis here should be defined by the parameters of Allegheny County v. ACLU, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989); Lynch v. Donnelly, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984); and Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). I do not think that Capitol Square Review & Advisory Board v. Pinette, — U.S. —, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995), assists us.
In Capitol Square, a “10-acre, state-owned' plaza surrounding the Statehouse” in the capítol city of Ohio had been “used for public speeches, gatherings, and festivals advocating and celebrating a variety of causes, both secular and religious” for over a century. Id. at —, 115 S.Ct. at 2444. By statute, the square was available for use by “the public ... for free discussion of public questions, or activities of broad public purpose,” and the Capitol Square Review and Advisory Board was given the responsibility for regulating public access, (internal quotations omitted). Id. at —, 115 S.Ct. at 2440. That Board rejected a request by Donnie Carr, the local leader of the Ku Klux Klan, to erect a display consisting of an unattended cross, and Can-appealed to the federal courts alleging a violation of the Constitution. In reviewing that decision, the Supreme Court limited itself to the Establishment Clause issue even though Carr argued that the state’s real reason for rejecting the request was its disapproval of the Elan’s political views. Thus, the only issue the Court discussed was the state’s right to limit private speech on public *1453 property that had historically been used as an open public forum.
The Court began its analysis by noting that “[respondents’ religious display in Capitol Square was private expression.” Id. at —, 115 S.Ct. at 2446. That expression was clearly entitled to protection regardless of content. “[W]e have not excluded from free-speech protections religious proselytizing. ...” Id. The city defended its rejection of the requested display by arguing that it had an interest in avoiding official endorsement of Christianity under the Establishment Clause. The Court relied in part upon the “endorsement test” and its prior holding in Allegheny and Lynch to reject that position.
We find it peculiar to say that government ‘promotes’ or ‘favors’ a religious display by giving it the same access to a public forum that all other displays enjoy.... And as a matter of Establishment Clause jurisprudence, we have consistently held that it is no violation for government to enact neutral policies that happen to benefit religion.
Id. at —, 115 S.Ct. at 2447. Accordingly, I do not think that Capitol Square illuminates our present inquiry. Our analysis does not involve private speech. Rather, here, the City itself owned and erected the display at issue.
Nevertheless, as the majority quite correctly points out, Lynch and Allegheny require the result we reach here today. Furthermore, as my colleagues note, in Lemon, the Supreme Court held that the Establishment Clause requires that state action 1) have a secular purpose; 2) have a primary effect that neither advances nor inhibits religion; and 3) avoid excessive government entanglement with religion. Lemon, 403 U.S. at 612-13, 91 S.Ct. at 2111-12. I think my colleagues’ analysis of Lynch and Allegheny establishes that the first display is inconsistent with the prohibitions of Lemon and properly remands to determine the legality of the second display. Accordingly, I join the opinion with the reservations noted herein.